UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE No. 15-20091-CR-LENARD/GOODMAN

UNITED STATES OF AMERICA

v.

STEVE EVERETTE JENKINS

    Defendant.
_____/

## REPORT AND RECOMMENDATIONS ON
## DEFENDANT'S MOTION TO SUPPRESS

Defendant Steve Everette Jenkins is charged with possessing a firearm and ammunition having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g). He filed a Motion to Suppress requesting that the Court suppress any and all evidence obtained as a result of his allegedly unlawful search and seizure, including the firearm, ammunition, and magazine. [ECF No. 20]. The Government filed a Response in Opposition. [ECF No. 27]. United States District Court Judge Joan A. Lenard referred the Motion to Suppress to the Undersigned. [ECF No. 21]. On May 8, 2015, the Undersigned held an evidentiary hearing on the Motion to Suppress. [ECF No. 28]. For the reasons outlined below, the Undersigned **respectfully recommends** that the District Court **deny** Defendant's Motion.

### I.     Officer Freire's testimony at the evidentiary hearing

Officer Freire ("Freire") was the only witness called at the hearing, and he testified as follows:

On the afternoon of February 4, 2015, Freire was in a marked police cruiser when he heard on the police radio the location and description of an individual -- black male wearing a red hat and white shirt and carrying a firearm. Freire and Officer Darbouze ("Darbouze") went to a gas station in the area, but they did not see a person matching the description. Detective Hufnagel reported on the police radio that he spotted a man fitting the description and provided a specific location. Darbouze, in a separate marked police cruiser, directly approached the individual, who was under a tree in an open field with approximately fifteen other people. When the individual spotted Darbouze, he started quickly walking, and then running, away from the cruiser. Darbouze began to chase him on foot.

Because Freire anticipated the individual might run off, Freire drove in a different direction than Darbouze, in order to block off a nearby alley and cut off the individual. The individual encountered Freire's cruiser. They were about two car lengths away from one another. Then, as the individual was running, he took a firearm out of his right-side pocket and threw it high in the air. It landed in an open field. Freire never lost sight of the firearm. The individual ran away from Freire's cruiser and started to run back the other way.

In the meantime, however, Darbouze had continued chasing the individual on foot and at gunpoint. The individual re-encountered Darbouze. At this point, the individual obeyed Darbouze's orders, placed himself on the ground, and put his hands to his sides.

Once on the ground, Freire handcuffed the individual and kept an eye on the firearm thrown by the individual. No one else approached the firearm until Freire retrieved it after handcuffing Jenkins. Freire then put the firearm in the cruiser. After the individual provided his name and date of birth, Freire conducted a background check and identified him as a convicted felon. The officers arrested the individual. Freire identified Defendant Jenkins as the individual who fled and threw the gun in the air.

During the cross-examination, defense counsel brought out a few inconsistencies between Freire's testimony at the hearing and the testimony he gave during a March 18, 2015 deposition in a related state court case. The Court does not view these inconsistencies as significant. The inconsistencies were: (1) whether Defendant was approximately two car lengths away from Freire versus one car length away, (2) whether Freire initially saw Defendant rapidly walking and then running away from Darbouze versus only rapidly walking, (3) whether Defendant had his hand in his right-side pocket versus on the right side of his pants, and (4) whether Defendant, once on the ground, placed his hands to his sides versus on his head. Freire's basic testimony --

Jenkins fled when he saw police, ran down an alley, removed a gun from his right pocket, and flung it in the air when he encountered Freire near the end of the alley -- remained constant.

## II.     Motion to Suppress/Legal Analysis

The Undersigned finds Freire's testimony credible. Although Defendant demonstrated some inconsistencies, the discrepancies were not significant. The main thread of the testimony remained consistent. Freire readily conceded the inconsistencies and did not appear troubled by the modest differences between his deposition testimony and his in-Court testimony. The Undersigned observed Freire's demeanor and finds him to be a credible witness.

The Court now turns to the issues regarding the Fourth Amendment -- whether the officers had reasonable suspicion to seize Defendant, whether the seizure occurred before or after Defendant tossed the firearm, and whether the firearm was the fruit of the purportedly-unlawful seizure (as opposed to being abandoned property).

Consistent with the Fourth Amendment, an officer may conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968). Nervous, evasive behavior is a factor in determining reasonable suspicion, and "headlong flight -- wherever it occurs -- is the consummate act of evasion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). The Supreme Court in *Wardlow* further stated:

> [ ] unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business;" in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

528 at 125; *see also United States v. Franklin*, 323 F.3d 1298 (11th Cir. 2003) ("While flight is not proof of wrongdoing, it is indicative of such. Innocent persons might run from police officers; but flight creates an ambiguity; and the officers may stop the person to resolve the ambiguity.") (inner citations omitted).

Here, Defendant's flight upon seeing Darbouze's cruiser was sufficient to establish reasonable suspicion to detain him. Moreover, officers not only observed Defendant fleeing when he noticed them approaching, but they also saw that Defendant matched the radio description. In addition, Freire saw Jenkins throw away a firearm while fleeing. Accordingly, the officers had reasonable suspicion that criminal activity was afoot, and appropriately seized Defendant. Further, the officers, after identifying Defendant as a convicted felon and seeing him toss a firearm in the air, had probable cause to arrest him for felon in possession of a firearm. *See United States v. Lyons* 403 F.3d 1248, 1253 (11th Cir. 2005) ("[Probable cause to arrest exists] when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.") (citations omitted).

5

The focus then shifts to when the officers seized Defendant and whether the firearm was the fruit of the seizure. A person is "seized" within the meaning of the Fourth Amendment "only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). A suspect fleeing from officers has not been seized within the meaning of the Fourth Amendment until that flight is either terminated by either force or submission to the pursuing officer's authority. *See California v. Hodari*, 499 U.S. 621, 623-628 (1991).

Additionally, items abandoned during a suspect's flight from officers but before the flight is terminated by either force or submission to the pursuing officers' authority are not "fruit of a seizure." *Id*. at 629 (finding that the cocaine the defendant abandoned while fleeing from officers was not "fruit of a seizure" because the defendant was not seized until he was tackled by officers); *see also United States v. Dolomon*, 569 Fed. Appx. 889, 893 (11th Cir. 2014) (finding that the firearm was not suppressible as fruit of an unconstitutional seizure because the defendant discarded the firearm before he was actually seized, thereby abandoning it).

Here, defense counsel contended Defendant was seized once he saw Freire. He argued that Jenkins submitted to police authority before he rid himself of the firearm to demonstrate he was no longer a threat and obeyed Darbouze's orders to get to the ground. According to this defense theory, Jenkins **first** submitted to police authority and <u>then</u> threw the gun to the side. Under this theory, the Government could not rely

6

on the gun toss to support the initial detention. Therefore, Defendant contended at the hearing that police lacked reasonable suspicion to detain him -- i.e., when he submitted to authority and stopped running -- because flight alone was insufficient.

This defense theory, while interesting, is not supported by any actual evidence. It is simply rhetoric. Freire's testimony clearly indicated that Defendant fled from one officer (Darbouze) in a police cruiser, encountered another officer (Freiri) in a different police cruiser, tossed the firearm while fleeing back in the other direction, and *then* re-encountered the original officer (Darbouze), who was now chasing him on foot and at gunpoint. It was only at the point when Defendant re-encountered Darbouze -- and after Defendant already rid himself of the firearm -- that he obeyed Darbouze's orders and stopped fleeing. As such, the officers seized Defendant **after** he abandoned the firearm. Therefore, the firearm is not a fruit of the seizure because Defendant abandoned the firearm (by throwing it in the air, into a field) *before* submitting to police authority.

Accordingly, the Undersigned respectfully recommends that the District Court deny the motion to suppress.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the Parties have **7** days after being served with a copy of this Report and Recommendations to serve and file written objections, if any, with the District Court. Each Party may file a response to

the other Party's objection within **3** days of the objection.[1] Failure to file timely objections shall bar the Parties from a de novo determination by the District Court of an issue covered in this Report and Recommendations and bar the Parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)).

    **Respectfully recommended,** in Chambers, in Miami, Florida, May 13th, 2015.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Hon. Joan A. Lenard
All counsel of record

---

[1] Given the upcoming trial schedule, the Undersigned is shortening the time in which the parties have to file objections and responses. The Undersigned is authorized to adjust the deadlines, and I conclude that this deadline modification is appropriate and not unduly prejudicial. This is a one-witness hearing, the legal issues are not complex, and defense counsel already briefed the issue before the hearing.